# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BRIDGET DREHER, | : | |
| Plaintiff, | : | Case No. 3:08cv00325 |
| vs. | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Sharon L. Ovington |
| ESKCO, INC., | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Bridget Dreher originally filed her Complaint in state court claiming that her former employer, Defendant ESKCO, Inc., violated her rights under the Family and Medical Leave Act of 1990 (FMLA). ESKCO removed the case to this Court.

The case is presently pending upon ESKCO's Motion to Stay Claims Pending Arbitration (Doc. #5), Plaintiff's Memorandum in Opposition (Doc. #8), ESKCO'S Reply (Doc. #9), Plaintiff's Motion to Remand (Doc. #7), ESKCO's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11).

This case has been referred to the undersigned Judicial Officer pursuant to 28 U.S.C. §636(b)(1)(A), (B), and (C) to hold a hearing, consider any necessary briefing, and issue a Report and Recommendation limited to the issue of whether the parties'

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

arbitration clause in paragraph 20 of their Employment Agreement is unconscionable. (Doc. #12). The Court has held an evidentiary hearing, and the parties have filed Supplemental Memos (Doc. #16, 17, 18) in support of their respective positions.

ESKCO contends that the case must be stayed and transferred to arbitration under the Federal Arbitration Act, 9 U.S.C. §1, *et seq*., pursuant to the parties' agreement in paragraph 20 of the Employment Agreement. Plaintiff contends that neither a stay nor arbitration is warranted because paragraph 20 is unconscionable and thus unenforceable.

Before determining whether paragraph 20 is unconscionable, more specific background information must be explored.

## II. BACKGROUND

At the beginning of Plaintiff's employment with ESKCO, Plaintiff and an ESKCO Vice President, David Schindler, executed the parties' Employment Agreement. (Plaintiff's Hearing Exhibit 1). Paragraph 20 of the parties' Employment Agreement containing a provision titled "Mediation and Arbitration," which first describes the parties' agreement to mediate "Any dispute arising from this Agreement...," *id*. at Exh. 1, through a neutral third party. Paragraph 20 continues:

> If the mediation is unsuccessful, ESKCO and Employee agree that the dispute shall be decided by binding arbitration under the rules of the American Arbitration Association. ESKCO and Employee agree that the decision of the arbitrators shall be binding on both parties and may be entered and enforced in any court of competent jurisdiction by either ESKCO or Employee. The prevailing party in the arbitration proceedings shall be awarded reasonable attorney fees, expert witness costs and expenses, and all other costs and expenses incurred directly or indirectly in connection with the proceedings, unless the arbitrators shall for good cause determine otherwise. Each party agrees any arbitration proceedings shall be conducted in Montgomery County, Ohio. Anything herein to the contrary notwithstanding, if either party refuses to submit to mediation and/or arbitration, if ESKCO decides to seek a restraining order or injunction against Employee or if either party resorts to any other court proceeding, all actions shall be instituted in the Court of Common Please of Montgomery County, Ohio. Such court shall have jurisdiction to enforce any terms of

> this Agreement and to resolve any disputes which arise under this Agreement. Employee further agrees and consents to submit to the jurisdiction of the Montgomery County, Ohio, Court of Common Pleas over his/her person for purposes of enforcing any terms of this Agreement or resolving any disputes which arise under this Agreement, and specifically agrees to waive his/her right to remove or transfer any proceeding from the Montgomery County, Ohio, Court of Common Pleas.

*Id*. at ¶20.

Before the parties entered into the Employment Agreement, ESKCO sent her an offer letter, which stated, in part, "The offer is contingent upon you signing the enclosed Employment Agreement...." *Id*. at Exh. 2. The letter did not mention that the Employment Agreement contained a "Mediation and Arbitration" provision. *Id*.

On October 13, 2004, Plaintiff met with David Schindler and signed ESKCO's offer letter thus agreeing "to the terms and conditions of this [ESKCO's] employment offer..." *Id*. Plaintiff also signed the parties' Employment Agreement on October 13, 2004. *Id*. at Exh. 1, p. 9. Paragraph 20 of the Employment Agreement is not in smaller or fine print; it is set forth in the same size type as the remaining text of the document.

During the evidentiary hearing in the present case, Plaintiff testified that at the time she signed the Employment Agreement, she did not understand what arbitration was and she had never signed an agreement containing an arbitration provision. She further testified no one at ESKCO discussed the arbitration provision in paragraph 20 of the Employment Agreement and no one told her that the terms of the Arbitration provision could be modified.

Plaintiff acknowledged that she did not read the whole Employment Agreement on the day she signed it. Instead she merely perused it or scanned it. She testified that she is not comfortable with her reading ability and described herself as "not a very good reader." She estimated that it would have taken her about one-half hour to read all of the Employment Agreement. And she felt at the time like she did not have time to read the whole document because they had a lot to do that day and she was very uncomfortable

knowing she would need to sit that long in order to read the whole document. She also understood at the time she signed the Employment Agreement – based on the offer letter – that the job offer was contingent upon her signing the Employment Agreement.

Plaintiff acknowledged that she is not claiming anyone tricked her into signing the Employment Agreement. She also acknowledged that no one at ESKCO precluded her from reading the entire Employment Agreement, and she did not ask questions about the Employment Agreement. Again, she did not feel free under the circumstances to ask such questions. Plaintiff testified, moreover, she was anxious to start the job.

Plaintiff further explained that she was given the paperwork and told, essentially, "here is the paperwork you need to sign to get started." It was not, according to Plaintiff, an offer of negotiation. Plaintiff also stated that David Schindler told her she had to sign the Employment Agreement.

David Schindler testified that the offer of employment to Plaintiff was contingent upon her signing "<u>an</u>" Employment Agreement, not necessarily the exact one she signed. He did not recall Plaintiff asking him any questions on the day she signed the Employment Agreement.

Another ESKCO officer, Jay Schindler, testified that ESKCO, or someone on ESKCO's behalf, drafted the Employment Agreement.

Plaintiff attended college earning sufficient credits to be in her third year but not enough to earn a four-year degree. She also did not earn high grades. During one semester, she was required to "sit out" because of her low grades.

Plaintiff's work experience involved a steady progression of success, especially in jobs involving sales. Several of her jobs have involved supervisory responsibility over employees, for example, she was at one point the manager of a jewelry store and was simultaneously a "star" salesperson. She described herself as strong in sales, and she considers herself to be a person of average intelligence.

## III. DISCUSSION

### A. The FAA and Unconscionability

As indicated above, the parties dispute whether paragraph 20 is enforceable: Plaintiff contends it is not enforceable because it is unconscionable. ESKCO contends that it is enforceable because the FAA strongly favors arbitration and paragraph 20 is not unconscionable.

Under the Federal Arbitration Act (FAA), arbitration agreements are generally enforceable and strongly favored. *Cooper v. MRM Investment Co.*, 367 F.3d 493, 498 (6th Cir. 2004). Section 2 of the FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. §2. One such ground is unconscionability: If a party shows that an agreement to arbitrate is unconscionable, the agreement will not be enforced and, consequently, the parties will not be compelled to arbitrate their disputes. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003); *see, e.g., Scovill v. WSYX/ABC*, 425 F.3d 1012, 1017-18 (6th Cir. 2005); *Stepp v. NCR Corp.*, 494 F.Supp.2d 826, 835-36 (S.D. Ohio 2007)(Rice, D.J.).

"Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834 (1993). Unconscionability has two components under Ohio law:

> '(1) substantive unconscionability, *i.e.*, unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e..*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible. Both elements must be present to find a contract unconscionable.'

*Morrison*, 317 F.3d at 666.[2] "These two concepts create what is, in essence, a two-prong

---

[2] (quoting *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.*, 143 Ohio App3d 708, 758 N.E.2d 1173, 1181 (2001)) (other citation omitted); *see Jones v. Household Realty Corp.*, 2003 WL 23750601 at *5 (S.D. Ohio 2003)(Rose, D.J.).

5

test of unconscionability. One must allege and prove a 'quantum' of both prongs in order to establish that a particular contract is unconscionable." *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834(1993); *see Garrett v. Hooters-Toledo*, 295 F.Supp.2d 774, 779 (N.D. Ohio 2003).

### B. <u>Procedural Unconscionability</u>

"In determining procedural unconscionability, Ohio courts look to 'factors bearing on the relative bargaining positions of the contracting parties, including their age, education, intelligence business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the terms were possible.'" *Morrison*, 317 F.3d at 666 (quoting *Cross v. Carnes*, 132 Ohio App.3d 157, 724 N.E.2d 828, 837 (1998)). "The crucial question is whether 'each party to the contract, considering his [or her] obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print.'" *Morrison*, 317 F.3d at 366 (quoting in part *Ohio Univ. Bd. of Trs. v. Smith*, 132 Ohio App.3d 211, 724 N.E.2d 1155, 1161 (1991)); *see Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834 (1993). "Unequal bargaining power alone is insufficient to find procedural unconscionability." *Stepp v. NCR Corp.*, 494 F.Supp.2d 826, 836 (S.D. Ohio 2007)(Rice, D.J.) (citing *Morrison*, 317 F.3d at 366-67).

The testimony and Exhibits presented during the Court's hearing does not reveal that the procedure encountered by Plaintiff in agreeing to arbitrate was unconscionable. Although there is little, if any, doubt that ESKCO's offer of employment was contingent upon her signing the Employment Agreement, and although Plaintiff doubtlessly felt some subjective pressure to sign the Employment Agreement as it was written, the fatal weakness in Plaintiff's assertion of procedural unconscionability is the fact that she did not read the whole Employment Agreement before signing it. Because she failed to read the whole agreement, no issue regarding the meaning or substance of the arbitration

6

provision arose prior to Plaintiff agreeing to the terms of the Employment Agreement as conclusively established by her signature. "Arbitration cannot be forced upon parties who do not consent to it.... Thus, an undisclosed arbitration agreement or one hidden in an undisclosed terms-and-conditions package cannot bind [a party]." *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1016 (6th Cir. 2003)(citations omitted). "However, the law is equally clear that [a party] cannot be excused from complying with the arbitration provision if it simply failed properly to read the contract." *Id.* (citing, in part, *ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 692 N.E.2d 574, 579 (1998)). "Taken together, these two points establish the general rule that 'one who signs a contract which he has the opportunity to read and understand, is bound by its provisions.'" *Id.* (quoting, in part, *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000)).

Plaintiff's explanation of why she signed the Employment Agreement without reading it in its entirety does not relieve her from the contractual consequences of her signature. Her uncomfortable feeling about her weak reading skills does not assist her because her employment success over many years doubtlessly required her to be able to read at more than a basic level and her educational background established that she can read beyond the high-school level. Her emphasis on the fact that her college work resulted in poor grades does not assist her because she completed slightly more than two years of college, a fact tending to show that she underestimates her reading ability.

Even if Plaintiff's reading skills are weak, no one at ESKCO precluded her from asking questions about the Employment Agreement or refused to answer any of her questions about the Employment Agreement (she did not ask any) or limited the time she had to read the Employment Agreement. In addition, while Plaintiff felt rushed on the day she signed the Employment Agreement, this was due as much to her own anxiety and eagerness to start the job as it was to any conduct or comment by anyone at ESKCO. Plaintiff, moreover, is not asserting that ESKCO attempted to trick her into signing an

7

agreement with a hidden arbitration provision, and the Employment Agreement on its face does not show any attempt by ESKCO to hide or mask the arbitration provision in any way. Paragraph 20 is written in the same size type as the remaining text of the Employment Agreement, and therefore, paragraph 20 is not hidden in fine print.

At the heart of the circumstances facing Plaintiff when she signed the Employment Agreement was her understandable desire to obtain the job ESKCO was offering her. To secure that job without introducing any potential risk of rejection, Plaintiff made a reasoned, albeit somewhat hurried, choice not to ask for time to read the Employment Agreement and not to ask any questions about it. In doing so, she effectively decided to accept the job without knowing what the specific terms of her employment would be. Given this, her lack of knowledge about the Arbitration provision in paragraph 20 is attributable to her rather than to any misconduct or overreaching by ESKCO.

Accordingly, Plaintiff has not shown procedural unconscionability in the parties' agreement to arbitrate pursuant to paragraph 20. Yet the parties also dispute whether certain aspects of paragraph 20 are unenforceable and, thus, severable from the arbitration agreement. The analysis thus turns next to these additional disputes.

### C. <u>Unenforceability and Severability</u>

Plaintiff contends that a loser-pay provision in paragraph 20 is unenforceable because – unlike the FMLA – paragraph 20 requires the loser to pay attorney fees as well as all costs and expenses associated with arbitration. Plaintiff further contends that this offending provision may not be severed from the parties' Employment Agreement.

ESKCO maintains that the presence of the loser-pay provision does not preclude arbitration because the provision is not mandatory – that is, it does not require the arbitrator to impose attorney fees, costs, and expenses; it merely gives the arbitrator the discretion to impose such an award based upon "good cause." (Doc. #9 at 4).

Paragraph 20 contains the following loser-pay provision:

8

> The prevailing party in the arbitration proceedings shall be awarded reasonable attorney fees, expert witness costs and expenses, and all other costs and expenses incurred directly or indirectly in connection with the proceedings, unless the arbitrators shall for good cause determine otherwise.

(Plaintiff's hearing Exh. 1 at ¶20). By providing a prevailing ESKCO with the right to recover its reasonable attorney fees, costs, and expenses the loser-pay provision extends to ESKCO a right the FMLA does not provide to employers. *See* 29 U.S.C. §2617(a)(3). Congress did not provide FMLA defendants, like ESKCO, a similar right to recover such fees and costs. *See* 29 U.S.C. §§2617(a)(1)-(3). This aspect of paragraph 20 is therefore unenforceable. *Cf. Morrison*, 317 F.3d at 666 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.") (citation omitted); *cf. also, Haro v. NCR Corp.*, 2006 WL 2990386 (S.D. Ohio 2006)(Rose, D.J.). ESKCO's reliance on the discretionary nature of the arbitrator's authority to award attorney fees, costs, and expenses lacks merit because the existence of such discretion does not eliminate the possibility that a prevailing ESKCO would secure a right to recover significant financial compensation from Plaintiff that it does not retain under the FMLA.

Plaintiff also contends that the limitations on discovery set by paragraph 19 requirement that the arbitration take place under the American Arbitration Association's Commercial Rules rather than the AAA's Employment Rules is unenforceable. This is so, Plaintiff reasons, because the AAA's Commercial Rule places much greater limitations on discovery than its Employment Rules. Plaintiff explains that the Commercial Rule do not allow the taking of depositions, while the Employment Rules do allow this. Plaintiff's argument is well taken. In most employment cases, discovery is driven mainly by depositions with document-discovery tending to refute or confirm the deposition testimony. The most significant documents, moreover, are often in the defendant/employer's possession, rather than employee's possession. There is nothing in

9

the present record to contradict these general truisms in the present case. As a result, the Employment Agreement's reliance on the AAA's Commercial Rules rather than its Employment Rules works an unfair advantage to ESKCO and potentially prejudices Plaintiff's ability to support her claims and to challenge ESKCO's case in defense. Although some limitations on discovery are expected during arbitration, *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001), a wholesale preclusion of the taking of depositions unenforceable. *Cf. Walker v. Ryan's Family Steak Houses, Inc*., 400 F.3d 370, 387-88 (6th Cir. 2005)(under the circumstances at issue in *Walker*, limitation to one deposition as of right substantively unconscionable).

Plaintiff next contends that there is nothing in the agreement requiring ESKCO to shoulder any of the up-front costs of arbitration. Plaintiff correctly asserts that filing fee for arbitration will amount at least to $2,550.00. *See* Doc. # 16 at 9 (and Exhibits cited therein). These up-front costs are much greater than filing fee in this Court. Yet Plaintiff does not assert that she lacks the ability to pay this up-front costs, and the FMLA allows Plaintiff to recover these costs from ESKCO if she succeeds in proving her FMLA claim. *See* 29 U.S.C. §2617(a)(3). Thus, this aspect of the Employment Agreement is not unenforceable.

Turning next to whether the unenforceable provisions are severable, the Employment Agreement states:

> Should any of Employee's obligations under this Agreement be found illegal or unenforceable in any respect, such illegality or unenforceability shall not affect the other provisions of this Agreement, all of which shall remain enforceable in accordance with their terms. Despite the preceding sentence, should any of the Employee's obligation under this Agreement be found illegal or unenforceable because it is too broad with respect to duration, geographic scope or subject matter, such obligation shall be deemed and construed to be reduced to the maximum duration, geographic scope and subject matter allowable under applicable law.

(Plaintiff's Exh. 1 at ¶18). Through this contract language, the parties effectively agreed to sever the unenforceable provisions in the Agreement – including the two discussed

above. Plaintiff contends otherwise by emphasizing that the second sentence of paragraph 18 limits the entire severability provision to her non-compete obligations under the contract. This contention lacks merit. Although the plain meaning of the second sentence of paragraph 18 focuses on Plaintiff's non-compete obligations, the second sentence cannot be reasonably read to limit the first sentence, which is simply a more general severability provision.

Accordingly, two aspects of the parties' Employment Agreement are substantively unconscionable: (1) the loser-pay provision in paragraph 20 to the extent it permits ESKCO to recover from Plaintiff its attorney fees, and (2) the imposition of the AAA's Commercial Rules rather than the AAA's Employment Rules. Pursuant to the parties' agreement in paragraph 18 of the Employment Agreement, these provisions must be severed from the Employment Agreement.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Court find two aspects of the parties' Employment Agreement substantively unconscionable: (a) the loser-pay provision in paragraph 20 to the extent it permits ESKCO to recover from Plaintiff its attorney fees, and (b) the imposition of the AAA's Commercial Rules rather than the AAA's Employment Rules; and

2. The Court sever those two provisions from paragraph 20 of the parties' Employment Agreement.

May 27, 2009

                 s/ Sharon L. Ovington
                 Sharon L. Ovington
               United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).