# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

**BRIDGET DREHER,**

                         **Plaintiff,**

**-v-**

**ESKCO, INC.,**

                         **Defendant.**

**Case No. 3:08-cv-325**

**Judge Thomas M. Rose**

---

**BRIDGET DREHER,**

                         **Plaintiff,**

**-v-**

**JAMES R. SCHINDLER,**

                         **Defendant.**

**Case No. 3:09-cv-209**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER GRANTING SCHINDLER'S MOTION TO CONSOLIDATE (Case No. 3:09-cv-209, doc. #4); CONSOLIDATING CASES NO. 3:09-CV-325 AND 3:09-CV-209; OVERRULING DREHER'S OBJECTIONS (Case No. 3:08-cv-325, doc. #21) TO MAGISTRATE JUDGE OVINGTON'S REPORT AND RECOMMENDATIONS; ADOPTING MAGISTRATE JUDGE OVINGTON'S REPORT AND RECOMMENDATIONS (Case No. 3:08-cv-325, doc. #19) IN ITS ENTIRETY; GRANTING ESKCO'S AND SCHINDLER'S MOTIONS TO STAY (Case No. 3:08-cv-325, doc. #5; Case No. 3:09-cv-209, doc. #4); SEVERING THE LOSER-PAY PROVISIONS AND THE COMMERCIAL RULES REQUIREMENTS FROM THE EMPLOYMENT AGREEMENT; ORDERING THAT ARBITRATION PROCEED WITHIN THIRTY (30) DAYS; ORDERING JOINT STATUS REPORTS TO THE COURT; AND FINDING DREHER'S MOTIONS TO REMAND (Case No. 3:08-cv-325, doc. #7; Case No. 3:09-cv-209, doc. #6) MOOT**

---

This matter arises from the employment and alleged subsequent termination of Plaintiff

Bridget Dreher ("Dreher") by Defendant ESKCO, Inc. ("ESKCO"). Dreher was employed by

ESKCO as a sales associate in October of 2004. James R. Schindler ("Schindler") was President

of ESKCO at the time and is now CEO.

## PROCEDURAL HISTORY

On August 13, 2008, Dreher filed a Complaint (the "2008 Complaint") in the Court of Common Pleas of Montgomery County, Ohio. The 2008 Complaint was subsequently removed to this Court by ESKCO based upon this Court having federal question jurisdiction. The 2008 Complaint forms the basis of Case No. 3:08-cv-325 (the "2008 Case").

The single claim in the 2008 Complaint against ESKCO is that ESKCO violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., when ESKCO refused to allow Dreher to take off full time to take care of her seriously ill minor daughter and when ESKCO terminated and/or constructively terminated her employment in retaliation for her use and request for use of FMLA leave.

On the same date as the 2008 Complaint was removed, ESKCO filed a Motion To Stay Claims Pending Arbitration. (Case No. 3:08-cv-325, Doc. #5.) Dreher then filed her response (Case No. 3:08-cv-325, doc. #8) and, on the same day, a Motion To Remand (Case No. 3:08-cv-325, doc. #7). Both ESKCO's Motion To Stay and Dreher's Motion To Remand are fully briefed.

In her response to ESKCO's Motion To Stay, Dreher argues that the Arbitration Clause, paragraph 20 in the Employment Agreement, is unenforceable for several reasons among which is unconscionability. ESKCO responded that it needed discovery and a hearing to address the unconscionability issue. Limited discovery was permitted and the issue of unconscionability was referred to Magistrate Judge Ovington. (Case No. 3:08-cv-325, Doc. #12.)

Magistrate Judge Ovington conducted the hearing on unconscionability and issued a

Report and Recommendations ("R&R") on May 27, 2009. (Case No. 3:08-cv-325, Doc. #19.) Dreher has objected to the R&R (Case No. 3:08-cv-325, doc. #21) and ESKCO has responded to Dreher's Objections (Case No. 3:08-cv-325, doc. #23).

On April 29, 2009, Dreher filed another Complaint (the "2009 Complaint") in the Court of Common Pleas of Montgomery County, Ohio which was subsequently removed to this Court based upon this Court having federal question jurisdiction over one of the claims. The 2009 Complaint forms the basis of Case No. 3:09-cv-209 (the "2009 Case").

The 2009 Complaint is against Schindler. Count I of the 2009 Complaint is for violation of the FMLA. Count IV is for gender discrimination in violation of Ohio Rev. Code §§ 4112.02 and 4112.99. The 2009 Complaint has no counts II or III and there are no paragraphs 16 through 40.

On the same day that the 2009 Complaint was removed, Schindler filed a Motion To Consolidate the cases that had been separately established for the 2008 and 2009 Complaints and a Motion To Stay the 2009 Complaint Pending Arbitration. (Case No. 3:09-cv-209, Doc. #4.) On June 22, 2009, Dreher responded to Schindler's Motion To Consolidate and Stay (Case No. 3:09-cv-209, doc. #7) and filed a Motion To Remand (Case No. 3:09-cv-209, doc. #6).

On July 7, 2009, Schindler replied to his Motion To Consolidate and Stay. (Doc. #8.) It is, therefore, fully briefed. Schindler has also filed a response to Dreher's Motion To Remand. (Case No. 3:09-cv-209, doc. #9.) A reply has not yet been submitted but, as will become apparent below, is not required.

Before addressing the Motions To Stay and Remand that are pending in both the 2008 and 2009 Cases, the Court will determine whether these Cases should be consolidated. A brief

factual background will first be set forth followed by an analysis of the Motion To Consolidate.
Depending upon the consolidation decision, the relevant Motions To Stay and Remand will then
be addressed.

## FACTUAL BACKGROUND[1]

Dreher went to work for ESKCO on October 18, 2004, as an account executive. (2008
Compl. ¶ 4.) On that same day, she entered into an "Employment Agreement" and a "Employee
Non-Disclosure and Non-Compete Agreement" with ESKCO.

At the time, Schindler was the President of ESKCO and had supervisory authority over
Dreher. (2009 Compl. ¶ 44.) He is now the CEO of ESKCO. (Id. ¶ 3.)

In January of 2007, Dreher's minor daughter was diagnosed with a serious medical
condition which worsened in late February and early March of that year. (2008 Compl. ¶ 5.) In
April of 2007, Dreher asked ESKCO to allow her to either take off full time under the FMLA or
work part time so that she could care for her minor daughter. (Id. ¶ 6.) ESKCO permitted Dreher
to begin working part time. (Id. ¶ 7.)

Approximately one month later, ESKCO informed Dreher that she could either resign or
she would be terminated because her sales had fallen. (Id. ¶ 8.) Dreher again requested that she
be permitted to take off full time under the FMLA. (Id. ¶ 9.) This request was denied. (Id.)
Dreher alleges that her employment at ESKCO was constructively terminated effective May 4,

---

[1]When evaluating a motion to compel arbitration, the Court treats the facts as it would
when ruling on a motion for summary judgment. *Raasch v. NCR Corporation*, 254 F.Supp.2d
847, 851 (S.D. Ohio 2003). Under the summary judgment standard, the court looks to the
pleadings and documentation submitted by both parties. *Id.* The facts and reasonable inferences
that can be drawn therefrom are construed in a light most favorable to the non moving-party. *Id.*
In this case, then, the facts and reasonable inferences are drawn from the pleadings and
documentation submitted by both parties and are viewed in a light most favorable to Dreher.

2007, and her work was given to a male who was hired shortly before her employment terminated. (2009 Compl. ¶ 11.)

ESKCO and Schindler argue that Dreher's claim is subject to a valid and enforceable arbitration clause in the Employment Agreement, specifically paragraph 20 (the "Arbitration Clause"). Paragraph 20 of the Employment Agreement is as follows:

> Mediation and Arbitration. Any dispute arising from this Agreement, which can not be resolved through normal practices and procedures of ESKCO, shall be resolved through a mediation/arbitration approach. ESKCO and Employee shall select a mutually agreeable, neutral third party to help mediate any dispute which arises under the terms of this Agreement. If the mediation is unsuccessful, ESKCO and Employee agree that the dispute shall be decided by binding arbitration under the rules of the American Arbitration Association. ESKCO and Employee agree that the decision of the arbitrators shall be binding on both parties and may be entered and enforced in any court of competent jurisdiction by either ESKCO or Employee. The prevailing party in the arbitration proceedings shall be awarded reasonable attorney fees, expert witness costs and expenses, and all other costs and expenses incurred directly or indirectly in connection with the proceedings, unless the arbitrators shall for good cause determine otherwise. Each party agrees any arbitration proceedings shall be conducted in Montgomery County, Ohio. Anything herein to the contrary notwithstanding, if either party refuses to submit to mediation and/or arbitration, if ESKCO decides to seek a restraining order or injunction against Employee or if either party resorts to any other court proceeding, all actions shall be instituted in the Court of Common Pleas of Montgomery County, Ohio. Such court shall have jurisdiction to enforce any of the terms of this Agreement and to resolve any disputes which arise under this Agreement. Employee further agrees and consents to submit to the jurisdiction of the Montgomery County, Ohio, Court of Common Pleas over his/her person for purposes of enforcing any terms of this Agreement or resolving any disputes which arise under this Agreement, and specifically agrees to waive his/her right to remove or transfer any proceeding from the Montgomery County, Ohio, Court of Common Pleas.

The Employee Non-Disclosure and Non-Compete Agreement includes a "Mediation and Arbitration" clause at paragraph 12 that is not verbatim the same as the "Mediation and Arbitration" clause at paragraph 20 of the Employment Agreement. However, the clause at paragraph 12 of the Employee Non-Disclosure and Non-Compete Agreement is substantively

the same as the Arbitration Clause at paragraph 20 of the Employment Agreement.

Paragraph 18 of the Employment Agreement addresses severability. Paragraph 18 is as follows:

> <u>Severability and Scope of Obligation</u>. Should any of Employee's obligations under this Agreement be found illegal or unenforceable in any respect, such illegality or unenforceability shall not affect the other provisions of this Agreement, all of which shall remain enforceable in accordance with their terms. Despite the preceding sentence, should any of Employee's obligation under this Agreement be found illegal or unenforceable because it is too broad with respect to duration, geographical scope or subject matter, such obligation shall be deemed and construed to be reduced to the maximum duration, geographical scope and subject matter allowable under applicable law.

The Employee Non-Disclosure and Non-Compete Agreement includes this same provision at paragraph 8. Additional facts will be discussed with the issues to which they apply.

## MOTION TO CONSOLIDATE

Consolidation is governed by Federal Rule of Civil Procedure 42(a). Rule 42(a) provides that actions involving common questions of law and fact may be consolidated. *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1010-11 (6th Cir. 1993). The overriding purpose of consolidation is to save time when a joint trial is used instead of separate trials. *Id.* at 1011. However, before actions are properly consolidated, the court must determine:

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (quoting *Hendrix v. Raybestos-Manhattan Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).

Both the 2008 and 2009 Complaints are based upon allegations arising out of the termination of Dreher's employment at ESKCO. The same facts and circumstances surrounding

Dreher's termination from ESKCO form the basis of her claims in both Complaints.

Dreher indicates that she has no objection to consolidation of the two cases "if both cases remain in Court." (Doc. #7.) Whether both cases remain in court is decided below and Dreher has offered no argument against consolidation.

Since the 2008 and 2009 Cases involve common issues of law and fact, litigating them separately would cause unnecessary costs, would place unnecessary burdens on witnesses, and could lead to inconsistent judgments. Therefore, the two Cases will be consolidated. Schindler's Motion To Consolidate (Case No. 3:09-cv-2-09, doc. #4) is GRANTED.

The 2009 Case is consolidated into the 2008 Case. Any future pleadings shall be filed under the 2008 Case, No. 3:08-cv-325, and shall have the following caption:

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**BRIDGET DREHER,**

**Consolidated Case No. 3:08-CV-325**

     **Plaintiff,**

**Judge Thomas M. Rose**

**-v-**

**ESKCO, INC., et al.,**

     **Defendants.**

---

The consolidation shall be through final judgment. The motions currently pending in the 2009 Case, No. 3:09-cv-209, are addressed herein.

Dreher's Motions To Remand turn on whether the Court finds that Dreher's FMLA and discrimination claims are subject to the Employment Agreement that is the focus of the Motions

To Stay. Dreher argues for remand if the Court finds Dreher's FMLA and discrimination claims are subject to the Employment Agreement that is the subject of the Motions To Stay and that arbitration is not mandatory. Therefore, since the Motions To Remand turn on the results of the Motions To Stay, the Motions To Stay will next be addressed.

## MOTIONS TO STAY

Both ESKCO and Schindler have filed Motions To Stay arguing that Dreher's claims are subject to a mandatory arbitration clause contained in the Employment Agreement. Dreher opposes both of these Motions To Stay. The Relevant Legal Provisions will first be set forth followed by an analysis of the Motions.

### Relevant Legal Provisions

The Sixth Circuit has repeatedly applied the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3 et seq., to arbitration agreements formed in the employment setting. *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005), *cert. denied*, 546 U.S. 1030 (2005). The FAA expresses a strong public policy favoring arbitration of a "wide class of disputes" and provides for orders compelling arbitration when one party has "failed, neglected, or refused to comply with an arbitration agreement." *Id.*

Federal statutory claims may be the subject of arbitration agreements because the arbitration agreement only determines the choice of forum. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 295 n.10 (2002); *Raasch v. NCR Corporation*, 254 F. Supp.2d 847, 854 (S.D. Ohio2003). Further, by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights provided by the statute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

Doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration including doubts regarding the construction of the contract language or an allegation of waiver, delay or a like defense to arbitrability. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S.1, 24 (1983). However, courts cannot require the arbitration of claims that the parties did not agree to arbitrate. *Simon v. Pfizer*, 398 F.3d 765, 775 (6th Cir. 2004). The FAA provides that a written provision evidencing arbitration is enforceable unless grounds exist for revocation of the writing. *Walker*, 400 F.3d at 377. Grounds for revocation include "generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability…" *Id.* (citing *Cooper v. MRM Investment Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

When considering a motion to stay pending arbitration, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. *Prima Paint Corporation v. Flood & Conklin Mfg. Co.*, 388 U.S 395, 404 (1967). If the arbitration clause is enforceable, issues relating to the making and performance of the entire contract are for the arbitrator. *Id.*

The party refusing to comply with an arbitration agreement has the burden of proving that the claims at issue are unsuitable for arbitration. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 659 (6th Cir. 2003)(en banc). Further, to defeat a motion to stay pursuant to the FAA, the party opposing the motion to stay must demonstrate that the arbitration clause itself is problematic because arbitration provisions are enforceable apart from the remainder of the contract**.** *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).

Before compelling arbitration, the Court must: (1) determine whether the parties agreed

to arbitrate; (2) determine scope of that agreement; (3) if federal statutory claims are asserted, consider whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims are subject to arbitration, determine whether to stay the remainder of the proceedings pending arbitration. *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 392 (6th Cir. 2003), *cert. denied*, 546 U.S. 1214 (2006). Finally, as indicated above, any doubts regarding arbitrability are to be resolved in favor of arbitration. *Id.*

"The determinative factor of whether an arbitration provision can be enforced to settle a dispute is the existence of a contract between the parties demonstrating that they intended for such to be the case." *Raasch*, 254 F.Supp.2d at 854. However, if an action could be maintained without reference to the arbitration agreement or relationship at issue, it is likely outside the scope of the arbitration agreement. *Fazio,* 340 F.3d at 395.

The FAA provides for orders compelling arbitration when one party has refused to comply with an arbitration agreement. *Higgs v. Automotive Warranty Corporation of America*, Case No. 03-4381, 2005 WL 1313542 at*2 (6th Cir. May 13, 2005). The FAA contemplates a stay of proceedings in federal court, as compared to a dismissal of the action, "until such arbitration has been had in accordance with the terms of the agreement." *Raasch v. NCR Corporation*, 254 F.Supp.2d 847, 851 (S.D. Ohio 2003). However, when the terms of the arbitration agreement are enforceable and dictate that the arbitrator's decision is final and binding, federal courts have dismissed the federal claim. *Id.*

### Analysis of Motions To Stay

In this case, the Arbitration Clause in the Employment Agreement and the arbitration clause in the Employee Non-Disclosure and Non-Compete Agreement require Dreher and

ESKCO to submit disputes arising from those agreements to binding arbitration if disputes arising out of those agreements are not resolved by mediation. Further, the record indicates that the Parties have not yet attempted mediation.

Dreher argues that her claims should not be stayed pending arbitration. Specifically, she argues that: (1) the arbitration clause does not cover statutory claims like her FMLA claim and gender discrimination claim; (2) arbitration is not the exclusive method under the Employment Agreement for asserting claims against ESKCO and Schindler; (3) the arbitration clause is unenforceable because it requires the loser to pay attorney fees and other costs and the offending provision may not be severed; (4) the arbitration clause in the Employment Agreement has been superseded by the arbitration clause in the Employee Non-Disclosure and Non-Compete Agreement; (5) the arbitration clause is unenforceable because it is unconscionable; and (6) the arbitration clause is unenforceable because it is an improper waiver of her FMLA rights. Finally, in her memo opposing the Motion To Stay filed in the 2009 Case, Dreher argues that: (7) the arbitration clause does not require her to arbitrate any claims she has against Schindler because he was not a party to the Employment Agreement. Each of Dreher's arguments will be addressed seriatim.

(1) Arbitration Clause Does Not Cover FMLA Claim or Gender Discrimination Claim

Dreher first argues that her FMLA and gender discrimination claims should not be arbitrated because there is no term in the arbitration clause at issue that references the FMLA or gender discrimination and courts cannot require arbitration of statutory claims where they are not included within a general or specific arbitration provision. In support, Dreher cites *Simon v. Pfizer*.

However, *Simon* does not say that statutory claims not specifically included in a general or specific arbitration provision may not be required to be arbitrated. *Simon* says, "[w]hen faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration." 398 F.3d at 775. Further, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators. *Id.*(citing *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004).

The Supreme Court has determined that statutory claims may be the subject of arbitration agreements because an arbitration agreement only determines the choice of forum. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Further, statutory claims not specifically excluded from a general arbitration provision may be required to be arbitrated.

In this case, the Arbitration Clause is broad and covers any dispute arising from the Employment Agreement. Further, FMLA and gender discrimination claims are not specifically excluded by the Arbitration Clause. Finally, Dreher has not presented legal authority requiring that her FMLA or gender discrimination claims be excluded from arbitration.

Therefore, although it may be an accurate statement, Dreher's argument that the Arbitration Clause does not specifically require arbitration of her FMLA and gender discrimination claims is not persuasive. The Arbitration Clause is general in nature and does not specifically exclude Dreher's FMLA and gender discrimination claims from arbitration.

One of the purposes of the Employment Agreement is to establish the terms of Dreher's employment by ESKCO. The Employment agreement also discusses termination, compensation

and benefits regarding Dreher's employment. Dreher's FMLA and gender discrimination claims are in regard to her compensation, benefits and termination. Dreher's FMLA and gender discrimination claims, therefore, are subject to arbitration pursuant to the terms of the Employment Agreement.

    (2) Arbitration Is Not the Exclusive Method Under the Employment Agreement

Dreher next argues that she cannot be compelled to arbitrate her FMLA claim because arbitration is not the exclusive method under the Employment Agreement for asserting claims against ESKCO and Schindler. In support of this argument, Dreher cites language from the Arbitration Clause that, "if either party refuses to submit to mediation and/or arbitration, if ESKCO decides to seek a restraining order or injunction against Employee or if either party resorts to any other court proceeding, all actions shall be instituted in the Court of Common Pleas of Montgomery County, Ohio. Such court shall have jurisdiction to enforce any of the terms of this Agreement and to resolve any disputes which arise under this Agreement." Dreher believes that, based upon the above language, she has an option to arbitrate her FMLA and gender discrimination claims but is not required to do so.

The arbitration clause provides that, "any dispute arising from this Agreement, which can not be resolved through normal practices and procedures of ESKCO, shall be resolved through a mediation/arbitration approach." The arbitration clause continues by providing that ESKCO and Dreher will select a mutually agreeable, third party to help mediate the dispute. If mediation is unsuccessful, ESKCO and Dreher agree to take the dispute to arbitration.

Clearly, the arbitration clause does not offer an option to arbitrate. Arbitration is required for disputes arising under the Employment Agreement that cannot be resolved through ESKCO's

normal practices and procedures or through mediation. The language referenced by Dreher indicates the court in which either party may bring legal proceedings if, among other things, either party refuses to submit to mediation and/or arbitration or if either party resorts to any other court proceeding.

Dreher also argues that her counsel made a request for mediation in a letter dated April 2, 2008. (Declaration of Carol S. Wood ("Wood Decl.") Ex. 1.) On April 2, 2008, Dreher's counsel emailed ESKCO's counsel that, "[i]f we do not hear from you by close of business April 20, 2008, we will assume that your client has no intention of honoring its obligations and proceed accordingly. (Id.) On May 19, 2008, ESKCO's counsel responded, "To make it more productive when we do talk, what exactly is Bridget looking to do/or looking for?" (Id.) Dreher's counsel responded, "… she wants $18,000 to settle the non-compete issue, or if your client wants to settle all claims, she wants $28,000, which would include settlement of attorneys fees. We are ready to file the FMLA claim in court but I will hold off for one more week…" (Id.) On June 13, 2008, ESKCO's counsel responded, in part, "… it does not appear the ESKCO is willing to pay Bridget anything to resolve this matter at this time because, quite frankly, there is nothing to resolve…" (Id.) No mention is made of mediation in ESKCO's response.

The Employment Agreement entered into by ESKCO specifically requires ESKCO and Dreher to "select a mutually agreeable, neutral third party to help mediate any dispute which arises under the terms of this Agreement." The record does not indicate that this dispute has been mediated as required by the Employment Agreement. Further, the record does not indicate that ESKCO and Schindler have refused to mediate. ESKCO and Schindler make no mention of whether they have mediated or intend to mediate Dreher's claims. However, ESKCO and

Schindler are, as evidenced by their Motions now before the Court, seeking arbitration.

(3) Fee Provision Is Unenforceable

Dreher next argues that the Arbitration Clause is unenforceable because it requires the loser to pay attorneys fees and other costs associated with the arbitration. She also argues that the attorney-fee-provision may not be severed from the arbitration clause.

The Arbitration Clause, in part, provides that:

> The prevailing party in the arbitration proceedings shall be awarded reasonable attorney fees, expert witness costs and expenses, and all other costs and expenses incurred directly or indirectly in connection with the proceedings, unless the arbitrators shall for good cause determine otherwise.

The mediation and arbitration paragraph in the Employee Non-Disclosure and Non-Compete Agreement includes this same language.

This issue was argued by the Parties to Magistrate Judge Ovington to whom the issue of whether the arbitration clause is unconscionable was referred. Following a hearing and briefing, the Magistrate Judge issued a Report and Recommendations. (Doc. #19.)

As required by 28 U.S.C. §636(b) and Federal Rules of Civil Procedure Rule 72(b), the District Judge has made a de novo review of the record in this case. Upon said review, the Magistrate Judge's Report and Recommendations is ADOPTED IN ITS ENTIRETY. For the reasons stated therein, the loser-pay provisions found in both paragraphs 19 and 20 of the Employment Agreement are unenforceable.

Dreher objects to the Report and Recommendations to the extent that it does not find the portion of the loser-pay provision requiring the loser to pay "expert witness costs and expenses,

-15-

and all other costs and expenses incurred directly or indirectly in connection with the proceedings" unenforceable. However, this argument is not well founded because the Report and Recommendations finds that the entire loser-pay provision is unenforceable, including the requirement that the loser pay expert witness costs and expenses and all other costs.

The Magistrate Judge also determined that the provision in paragraph 19 of the Employment Agreement requiring that an arbitration take place under the American Arbitration Association's ("AAA's") Commercial Rules rather than the AAA's Employment Rules is unenforceable. This finding, as with the others, is adopted in its entirety.

Finally, the Report and Recommendations recommends that the loser-pay provisions, found in paragraphs 19 and 20 of the Employment Agreement, and the requirement in paragraph 19 that the AAA's Commercial Rules be used be severed from the Employment Agreement. This finding, too, is adopted in its entirety.

(4) Employment Agreement Is Superseded By Non-Disclosure and Non-Compete Agreement

Dreher next argues that ESKCO's Motion To Stay should be denied because it is based upon the Employment Agreement and the terms of the Employment Agreement are superceded by the terms of the Non-Disclosure and Non-Compete Agreement. Although signed on the same day, the Non-Disclosure and Non-Compete Agreement, according to Dreher, was signed after the Employment Agreement. (Dreher Decl. ¶ 1.) At the time, she also signed several other papers relating to her employment with ESKCO. (Id.)

One of the reasons cited in the Employee Non-Disclosure and Non-Compete Agreement for its existence is:

to formalize Company's [ESKCO's] existing guidelines with respect to trade secrets and confidential information and to set forth certain restrictions on the activities of Employee [Dreher] in order to insure that such trade secrets and confidential information are not obtained by Company's [ESKCO's] competitors.

Further, paragraph 20 of the Employee Non-Disclosure and Non-Compete Agreement provides:

This Agreement supercedes and replaces all former agreements or understandings, whether oral or written, between the Company [ESKCO] and Employee [Dreher], except for prior confidentiality agreements the Employee has signed relating to information not covered by this Agreement.

The record indicates that both the Employment Agreement and the Non-Disclosure and Non-Compete Agreement were signed and effective on the same date and were part of a package of forms that Dreher was asked to sign before her employment became effective. The Employment Agreement and the Employee Non-Disclosure and Non-Compete Agreement both include the same definition of Proprietary Information, both forbid the disclosure of proprietary information, and both include the same arbitration clause.

A reading of the two agreements together leads to the conclusion that the Employment Agreement is much broader than the Employee Non-Disclosure and Non-Compete Agreement. The substantive issues addressed in the Employment Agreement include employment-at-will, duties, performance, employee recommendations, termination of employment, compensation, benefits, non-disclosure of proprietary information, non-competition, conflict of interest, non-solicitation, territory, the use of ESKCO facilities, dispute resolution, and termination for disability. The substantive issues discussed in the Non-Compete Agreement include the ownership and non-disclosure of proprietary information, non-competition, non-solicitation, territory, use of company facilities, inability to secure employment, dispute resolution, and

employment-at-will. Thus, the Employment Agreement addresses duties, performance, employee recommendations and overall compensation and benefits and the Non-Compete Agreement does not. Both address the non-disclosure of proprietary information and non-competition.

Because the Non-Competition Agreement is more narrowly focused on the non-disclosure of proprietary information and non-competition, the clause indicating that the Non-Competition agreement supercedes and replaces all former agreements or understandings is reasonably read to apply only to former agreements or understandings relating to the non-disclosure of proprietary information and non-competition and not to the Employment Agreement. In addition, both of these agreements include the same arbitration clause that is the subject of this dispute.

### (5) Arbitration Clause Is Unconscionable

Dreher next argues that the Arbitration Clause is unenforceable because it contains unfair and unreasonable terms concerning payment of attorney fees and costs, because it requires the parties to follow AAA Commercial Rules for Arbitration rather than the rules specifically designed for employment cases[2] and because it is unconscionable. The terms regarding attorney fees and costs and the requirement that the Parties follow AAA Commercial Rules for Arbitration have been severed as indicated above for reasons that need not be repeated here.

---

[2]The Court notes that the Employment Arbitration Rules provided by Dreher indicate that disputes arising from an employer-promulgated plan are arbitrated using AAA's fee schedule for employment arbitration and that disputes arising under an individually-negotiated employment agreement or contract are arbitrated using AAA's Commercial Fee Schedule. Presumably, the Employment Agreement and the Non-Disclosure and Non-Compete Agreement are individually-negotiated employment agreements. Thus, the AAA's Commercial Fee Schedule and not their fee schedule for employment arbitrations would apply.

Unconscionability of the Arbitration Clause will be addressed here.

Under Ohio law, two elements must be satisfied to find a contract unconscionable. *Morrison*, 317 F.3d at 666. These two elements are: (1) substantive unconscionability which entails unfair and unreasonable contract terms and (2) procedural unconscionability which entails an absence of meaningful choice or understanding of the terms on the part of one party. *Id.*.

When determining procedural unconscionability, Ohio courts look to "factors bearing on the relative bargaining of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." *Id.*(citing *Cross v. Carnes*, 724 N.E.2d 828, 837 (Ohio Ct. App. 1998). The "crucial question" is whether each party to the contract, considering his obvious education or lack thereof, had a reasonable opportunity to understand the terms of the contract or were the important terms hidden in a maze of fine print. *Id.* (citing *Ohio University Board of Trustees v. Smith*, 724 N.E.2d 1155, 1161 (Ohio Ct. App. 1999).

In this case, after conducting a hearing, the Magistrate Judge determined that Dreher has not shown that the Arbitration Clause, as applied to Dreher, was procedurally unconscionable. The Court has adopted this finding along with other recommendations provided in the Magistrate Judge's Report and Recommendation. Thus, one of the requirements for unconscionability has not been shown and the Arbitration Clause is not unconscionable.

(6) Arbitration Clause Constitutes Improper Waiver of FMLA Claim

Dreher next argues that the Arbitration Clause is unenforceable as to her FMLA claim because the law does not permit an employer to require an employee to waive her rights, including a right to bring a claim in court, under the FMLA. In support, Dreher cites implementing regulation 29 C.F.R. § 825.220(d) and *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 457 (4th Cir. 2007), cert. denied, 128 S. Ct. 2931 (2008). However, neither this C.F.R. nor the *Taylor* case determine that FMLA claims cannot be decided in arbitration. They merely indicate that FMLA claims may not be waived.

Further, nothing in the language of the FMLA suggests that Congress wished to exempt disputes arising under the FMLA from arbitration. *Brinkerhoff v. Zachry Construction Corp.*, 2005 WL 1661693 at *6 (S.D. Ohio July 15, 2005)(citing *O'Neil v. Hilton Head Hospital*, 115 F.3d 272, 274 (4th Cir. 1997)). In fact, the Supreme Court has said that statutory claims may be the subject of arbitration agreements because an arbitration agreement only determines the choice of forum. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Thus, the Arbitration Clause does not constitute an improper waiver of Dreher's FMLA claim.

(7) Arbitration Clause Does Not Require Dreher To Arbitrate Claims Against Schindler

Dreher's final argument is that the Arbitration Clause does not require her to arbitrate any claims against Schindler because he was not a party to the Employment Agreement. Schindler responds that the Employment Agreement covers the dispute.

A party may not be required to submit to arbitration absent an agreement to do so. *Genaw v. Lieb*, 2005 WL 435211 at *2 (Ohio Ct. App. Feb. 25, 2005). The duty to arbitrate arises from and depends upon the contract which includes the arbitration language. *Id.* Further, several courts, including the federal Sixth Circuit and Ninth Circuits, have found that employees of the

entity that entered into an agreement to arbitrate are entitled to enforce the agreement's arbitration clause in an action against the employee and the entity. *Id.*

In this case, Schindler's signature does not appear on the Employment Agreement but he was the President of ESKCO at the time the Employment Agreement was signed. Further, the Arbitration Clause applies to any dispute arising from the Employment agreement and paragraph 25 of the Employment Agreements provide that the Employment Agreement "shall be binding upon and inure to the benefit of the parties hereto and their respective affiliates, successors and assigns."

Dreher's FMLA and gender discrimination claims against Schindler arise from her employment with ESKCO and Schindler's duties as an agent of ESKCO. Thus, Dreher's claims against Schindler arise from the Employment Agreement. Also, the Employment Agreement applies to Schindler because he is closely associated with ESKCO and thus is an affiliate covered by paragraph 25 of the Employment Agreement. The Arbitration Clause does require Dreher to arbitrate the FMLA and gender discrimination claims that she has brought against Schindler.

## Conclusion Regarding Motions To Stay

The Arbitration Clause applies to Dreher's FMLA and gender discrimination claims against both ESKCO and Schindler. Further, arbitration is the exclusive method, as set forth in the Employment Agreement, to adjudicate Dreher's FMLA and gender discrimination claims.

The Employment Agreement was not superceded by the Employee Non-Disclosure and Non-Compete Agreement, nor is the Arbitration Clause contained in the Employment

Agreement unenforceable. However, the loser-pay provision and the requirement that AAA's Commercial Rules be used are both unconscionable and are thus severed from the Employment Agreement.

Therefore, ESKCO's and Schindler's Motions To Stay are GRANTED. This matter is stayed pending arbitration of Dreher's FMLA and gender discrimination claims. Further, ESKCO and Schindler indicate that they want arbitration and Dreher indicates that she has attempted to arbitrate her claims. Therefore, the Parties are given until not later than thirty (30) days following entry of this Order to commence arbitration proceedings. Finally, the Parties are hereby ordered to provide joint reports to the Court regarding the status of arbitration every ninety (90) days beginning ninety (90) days following entry of this Order.

## MOTIONS TO REMAND

Dreher has filed Motions To Remand in both the 2008 and 2009 Cases. Dreher seeks remand in both cases if the Court decides that her FMLA and gender discrimination claims are subject to the Arbitration Clause but are not subject to mandatory arbitration. However, Dreher's FMLA and gender discrimination claims, as determined above, are subject to mandatory arbitration. Therefore, Dreher's Motions To Remand are MOOT.

**DONE** and **ORDERED** in Dayton, Ohio this Twenty-First day of July, 2009.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record